UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

FILED
05 JAN 12 AM 9:08

| | |
|---|---|
| ADAM P. MEYENBURG, ) | |
| ) | |
| Plaintiff, individually and on ) | |
| behalf of others similarly situated, ) | |
| ) | Case No.: 05-015 JPM |
| v. ) | Hon. G. Patrick Murphy |
| ) | |
| Exxon Mobil Corporation, a New Jersey ) | CLASS ACTION COMPLAINT |
| corporation. ) | |
| ) | |
| Defendant. | |

## CLASS ACTION COMPLAINT

### I.   BACKGROUND OF ACTION

1.   This is a class action that seeks a judgment (i) enjoining defendant Exxon Mobil Corporation ("ExxonMobil") from continuing to engage in false, deceptive, unfair, and unlawful business acts and practices in connection with the marketing, advertising, and sale of certain specifically identified automotive, commercial and industrial lubricants and (ii) awarding monetary damages on behalf of past direct and indirect purchasers of such products.

2.   As more particularly alleged herein, since 2002, ExxonMobil has marketed, advertised, and sold the Lubricant Products as higher performance products and charged purchasers more for them as compared to products with identical formulations that it marketed, advertised, and sold under a different brand name ("Different Brand Products") without informing purchasers that the Lubricant Products and Different Brand Products were identical in material respects. In fact, these distinctly branded, packaged, and priced products are the same. Hereinafter these products are

1

referred to as the "Harmonized Products." ExxonMobil actively concealed from purchasers (including members of the Class), and continues to conceal, that the Harmonized Products are the same. The higher priced Harmonized Products (hereinafter referred to as "Lubricant Products") are: Mobil Drive Clean 5W-30, 10W-30, 10W-40, 20W-50, 5W-20, HD 30, and HD 40; Mobil Clean; Mobil Multi Purpose ATF; Mobil ATF +3; Mobilube HD LS; Mobil Delvac Hydraulic 10W; Mobiltrans HD 10, HD 30, and HD 50; Mobilfluid 424; Mobilube HD Plus 80W-90 and HD Plus 85W-140; Mobilube HD 80W-90 and HD 85W-140; Mobilgear 626, 627, 629, 630, 632, 634, and 636; Exxon Nuto H 32, H 46, H 68, H 100, and H 150; Mobilux EP; Mobilith AW2; Mobil Pegasus 505; Mobil Almo 535, 529, and 532.

3.  Prior to the filing of this national class action, Counsel for the Plaintiff herein instituted a proceeding against ExxonMobil and several ExxonMobil Distributors on behalf of all California purchasers of the Lubricant Products. The California Court designated the action as "Complex" and assigned the case to the Honorable Ronald Sabraw for all purposes. Plaintiff brought the California action pursuant to California Business and Professions Code sections 17200 et seq. and 17500 et seq. (commonly known as California's Unfair Competition Law). ExxonMobil and Plaintiff engaged in extensive discovery, including an unsuccessful attempted dispositive motion by ExxonMobil and other highly contentious pretrial motion practice

## II. JURISDICTION AND VENUE

4.  Jurisdiction is based on diversity of citizenship and is proper pursuant to 28 U.S.C. section 1332 as the amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs and is between citizens of different states.

5.  Venue is proper pursuant to 28 U.S.C. section 1391 in the Southern

District of Illinois as a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Illinois and a substantial part of property that is the subject of the action is situated in the Southern District of Illinois. The Defendant is also subject to personal jurisdiction in the Southern District of Illinois.

### III. THE PARTIES

6. Plaintiff Adam P. Meyenburg ("Plaintiff") is a citizen of Illinois. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on his own behalf and in a representative capacity on behalf of all persons and entities who purchased any of the Lubricant Products within the United States, its Territories, and Possessions between April 1, 2002, and the date when first notice of class certification is given, excluding persons and entities who purchased any of the Lubricant Products during that period pursuant to a Lubricants Distributor Agreement.

7. Defendant Exxon Mobil Corporation ("ExxonMobil") is a New Jersey corporation with its principal place of business in Texas and which at all times relevant hereto has done business in the State of Illinois and in this judicial district.

### IV. GENERAL ALLEGATIONS

#### A. ExxonMobil's "Dual Brand Strategy"

8. Prior to the November 1999 merger between Exxon Corporation and Mobil Corporation ("the Merger"), each company (i) sold competing automotive, commercial and industrial lubrication products, (ii) blended its own automotive, commercial and industrial lubricants (including multi-grade motor oil and automotive transmission fluid), (iii) used different blend plants and formulas to produce its respective lubricant products, and (iv) marketed, advertised, and sold these products in Illinois and throughout the United States.

3

9. Prior to the Merger, Mobil Oil lubricant products were marketed and advertised as having performance characteristics that were superior to many similar products available to the public. As a result, (i) the Mobil Oil products were typically more expensive than those offered by its competitors (including Exxon Corporation) and (ii) the typical purchasers of Mobil Oil products were willing to "pay more" for "high-end" automotive, commercial and industrial lubricant products.

10. Also prior to the Merger, Exxon Corporation marketed, advertised, and sold its automotive, commercial and industrial lubricant products to different purchasers from those targeted by Mobil Oil: in contrast to the approach adopted by Mobil Oil, Exxon targeted those who considered vehicles more as a means of transportation. In other words, rather than looking for "high performance," the typical purchasers of Exxon brand products expected trouble-free motoring from reliable products that were widely available and competitively priced.

11. In connection with and after the Merger, ExxonMobil conducted extensive global market research about the brand-buying habits of those who purchased Mobil Oil and Exxon brand products. As a result of this market research, ExxonMobil determined that both brands enjoyed strong customer loyalty. Moreover, ExxonMobil specifically concluded that (i) purchasers of Mobil Oil products were generally willing to "pay more" for the higher performance and quality generally associated with that brand and (ii) purchasers of Exxon brand products were not generally willing to pay such a premium.

12. As a result of this market research and other factors, ExxonMobil adopted a dual-brand strategy under which it retained both the Exxon and Mobil Oil brands; this approach was calculated to satisfy the demands of both purchaser types described above. As part of the strategy, ExxonMobil created and implemented an advertising strategy specifically designed and intended to explain--and differentiate between--the two brands

that would be offered to retail, commercial, and industrial purchasers. In doing so, ExxonMobil presented and promoted the two brands as being distinctly different. As during the times before the Merger, in almost all cases, the Mobil Oil brands were (and are) touted as the "performance" products and Exxon brands as the "value-driven" option. Supposedly as a result of the performance and other differences between the two brands, ExxonMobil priced the two brands differently. ExxonMobil has marketed, advertised, and sold the Lubricant Products as higher performance products and charged purchasers more for them as compared to the Different Brand Products without informing purchasers that the Lubricant Products and Different Brand Products were identical in material respects.

13. ExxonMobil has implemented the dual-brand strategy directly and through distributors in Illinois and throughout the United States.

### B. ExxonMobil's "Harmonized Product" Program

14. ExxonMobil, in a purported effort to streamline costs, decided to "harmonize" its Mobil Oil and Exxon brands of automotive, commercial and industrial lubricants while at the same time implementing its dual-brand strategy. Pursuant to ExxonMobil's Product Harmonization Program, ExxonMobil combined its blending plants and blending formulas to create lubricants that were, in a word, the same. In fact, the Harmonized Products were (and are) stored together in and dispensed from the same storage tanks. The net and practical result of the combination of ExxonMobil's dual-brand strategy and its product harmonization program (collectively referred to as the "Product Harmonization Program") is a simple but unlawful one: ExxonMobil intentionally, deceptively, and unfairly marketed, advertised, and sold the Lubricant Products for a higher price than their Different Brand Product counterparts when in fact (i) the two sets of products were (and are) the same and (ii) the only difference is the

price.

15. In addition to ExxonMobil's Harmonized Products that are sold through various retail channels and distributors, ExxonMobil sells its lubricants in bulk quantities through distributors. Bulk lubricant products are typically delivered to the customer (often automotive repair and maintenance facilities) in a tanker truck and pumped into the customer's tank.

16. ExxonMobil implemented its Product Harmonization Program with respect to its harmonized bulk products by entering into a Harmonized Product Contract Addendum ("Addendum") with each of its distributors. Pursuant to the Addendum, ExxonMobil's distributors agreed to deliver bulk products from the same truck to the customer, charge the customer a higher price and remit more money to ExxonMobil for the Lubricant Products than the Different Brand Products.

17. ExxonMobil knew the Product Harmonization Program was deceptive, fraudulent, unfair and constituted false and deceptive advertising. Moreover, ExxonMobil actively attempted to conceal the Product Harmonization Program by among other things:

    a. Requiring that delivery drivers use closed clipboards so the current customer could not inadvertently or otherwise see or know that a previous delivery was sold as "Exxon" at a lower price than the "Mobil" for which the current customer is paying a higher price;

    b. Scheduling "Mobil" and "Exxon" deliveries separately so that the label on the product can be changed between "Mobil" deliveries and "Exxon" deliveries;

    c. Refusing to answer customer questions about the differences between the Mobil product and the Exxon product, but rather referring

such questions to ExxonMobil public relations;

   d. Requiring distributors to maintain detailed records in order to account to ExxonMobil on how much bulk product was sold as "Mobil" and how much was sold as "Exxon"; and,

   e. Charging members of the Class more money for the Lubricant Products than the Different Brand Products.

18. As a result of ExxonMobil's Product Harmonization Program, Defendant has unlawfully charged and collected (and continues to do so) from Plaintiff and other members of the Class more money for the Lubricant Products than for the corresponding Different Brand Products.

### C. Class Allegations

19. Plaintiff brings this action on his own behalf and as a class action pursuant to rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of all persons and entities who purchased any of the Lubricant Products within the United States, its Territories, and Possessions between April 1, 2002, and the date when first notice of class certification is given, excluding persons and entities who purchased any of the Lubricant Products during that period pursuant to a Lubricants Distributor Agreement.

### D. Each Of The Requirements Set Forth In Rule 23(A) For Maintenance Of A Class Action Is Satisfied Here.

20. **Numerosity**: Although the exact number of members of the Class can only be determined by appropriate discovery, the Class members number in the tens of thousands. The class is so numerous that joinder of all members is impractical. The Rule 23(a)(1) numerosity requirement is therefore met.

21. **Commonality**: The Rule 23(a)(2) commonality requirement is met

because of the existence of many questions of law and fact that are common to the Class. These include the following:

        a.      Whether ExxonMobil's Product Harmonization Program constitutes unfair or fraudulent business acts and practices in violation of the Illinois Consumer Fraud And Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 et seq., (the "ICFA"), the Illinois Deceptive Trade Practice Act, 815 Ill. Comp. Stat. 510/1 et seq. (the "DTPA") and similar statutes enacted by and enforced in the other states in which ExxonMobil implemented this scheme;

        b.      Whether ExxonMobil's Product Harmonization Program constitutes unfair or deceptive acts or practices in violation of the Section 5 of the Federal Trade Commission Act as interpreted under the Illinois ICFA and similar statutes enacted by and enforced in the other states in which ExxonMobil implemented this scheme;

        c.      Whether ExxonMobil's Product Harmonization Program constitutes a representation or advertisement that the Lubricant Products have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities they do not have;

        d.      Whether ExxonMobil's Product Harmonization Program constitutes a representation or advertisement that the Lubricant Products are of a particular standard, quality, or grade when they are of another;

        e.      Whether the Class are entitled to be granted injunctive relief under the Illinois ICFA, the Illinois DTPA and similar statutes enacted by and enforced in the other states in which ExxonMobil implemented this program;

        f.      Whether and to what extent the Class have suffered damages as a result of Defendant's unlawful conduct;

    g.  Whether the Class members are entitled to restitution;

    h.  Whether ExxonMobil willfully engaged in a deceptive business practice so that costs and/or attorneys' fees may be assessed against ExxonMobil under the Illinois ICFA, the Illinois DTPA and similar statutes enacted by and enforced in the other states in which ExxonMobil implemented this scheme.

22. **Typicality**: The Plaintiff's claims are typical of the Class. The Plaintiff and absent class members have been injured by the same deceptive, fraudulent, and unfair business acts and practices. The Rule 23(a)(3) typicality requirement is therefore met.

23. **Adequacy of Representation**: Plaintiff and Plaintiff's counsel will adequately represent the class. Plaintiff's counsel is especially experienced in representing plaintiff classes under Rule 23. The Rule 23(a)(4) requirement is therefore met.

    E.  **Rule 23(B)(3) Requirements Are Met Here**

24. **Predominance**: The common issues listed in paragraph 21, and particularly the question of whether ExxonMobil's Product Harmonization Program constitutes unfair or fraudulent business acts and practices in violation of the Illinois ICFA, the Illinois DTPA and similar statutes enacted by and enforced in the other states in which ExxonMobil implemented this scheme predominate over other issues. The Rule 23(b)(3) predominance requirement is therefore met.

**Superiority**: Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. A class action is superior to other means of adjudication because it will avoid a multiplicity of actions. Because the principal remedy sought is injunctive relief and whatever

monetary damages suffered by the Class are relatively small for each Class member, this action is particularly well-suited to maintenance as a class action and thus the Rule 23(b)(3) superiority requirement is therefore met.

## FIRST CAUSE OF ACTION

25. Plaintiff re-alleges and incorporates by reference, each and every allegation set forth in paragraphs 1 through 24 above, as though they are set forth in full here.

26. Section 815 ILCS 505/10a(c) of the Illinois ICFA provides that "in any action brought by a person under this Section, the Court may grant injunctive relief where appropriate . . . ." Section 815 ILCS 510/3 of the Illinois DTPA provides that, "A person likely to be damaged by a deceptive trade practice of another may be granted injunctive relief upon terms that the court considers reasonable."

27. ExxonMobil has committed and continues to commit unfair and deceptive acts and practices directed towards the Class through false and deceptive advertising, in violation of the Illinois ICFA, the Illinois DTPA and other similar statutes, by among other things:

    a. Advertising, promoting, marketing and selling to members of the Class the Harmonized Products as two separate and distinct product brands when in fact the products are the same;

    b. Intentionally concealing from members of the Class that the Mobil-branded Harmonized Products and the Exxon-branded Harmonized Products, which for many years were separate and distinct products that appealed to customers with specific but different expectations, are now the same products;

    c. Obtaining from members of the Class more money for the Lubricant Products than for materially identical Different Brand Products based upon

ExxonMobil's advertising and marketing campaigns which were based on ExxonMobil's exhaustive research into historical customer perceptions and expectations and not upon superior performance characteristics or ingredients as stated and implied by ExxonMobil's advertising, marketing and promotional activities.

28. Because Plaintiff and the Class have been deceived and are likely to continue to be deceived if ExxonMobil is allowed to continue its Product Harmonization Program, Plaintiff on behalf of itself and the Class seeks an injunction under section 815 ILCS 505/10a(c) of the Illinois ICFA, section 815 ILCS 510/3 of the Illinois DTPA and similar statutes prohibiting Defendant from using the Product Harmonization Program and from continuing to advertise, market and promote their dual brand strategy as to the Lubricant Products without making full, complete and adequate disclosure of ExxonMobil's Product Harmonization Program, or such other injunctive relief that addresses the program. Such injunction is necessary to prevent the use or employment by Defendant of those unfair and deceptive acts and practices alleged herein.

29. Because ExxonMobil willfully engaged in unfair and deceptive acts and practices by actively concealing from the public the truth about its Product Harmonization Program, this Court should assess costs and attorneys' fees against ExxonMobil as set forth in section 815 ILCS 505/10a(c) of the Illinois ICFA, section 815 ILCS 510/3 of the Illinois DTPA and similar statutes.

WHEREFORE, Plaintiff prays for judgment and relief against ExxonMobil as set for in the Prayer for Relief below.

## SECOND CAUSE OF ACTION

30. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1-29 above, as though they are set forth in full here.

31. Section 815 ILCS 505/2 of the Illinois ICFA and similar statutes enacted

by and enforced in the other states in which ExxonMobil implemented this scheme declares as unlawful, unfair methods of competition and unfair or deceptive acts or practices, including the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 815 ILCS 505/2, in the conduct of any trade or commerce whether any person has in fact been misled, deceived or damaged thereby.

32. Section 815 ILCS of the Illinois ICFA and similar statutes enacted by and enforced in the other states in which ExxonMobil implemented this scheme provides in relevant part that a person (as defined in the Act to include ExxonMobil) engages in an unfair and deceptive act and practice when such person uses any practice described in Section 2 of the Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, in the conduct of any trade or commerce, to wit: in the course of its business the person i) represents that goods or services have characteristics, uses, benefits that they do not have or ii) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another.

33. ExxonMobil has engaged and continues to engage in unfair and deceptive acts and practices under sections 815 ILCS 505/2 and by incorporation 815 ILCS 510/2 and similar statutes enacted by and enforced in the other states in which ExxonMobil implemented this program by employing its Product Harmonization Program with the intent to directly or indirectly induce members of the Class to purchase said Lubricant Products at a higher price than the identical Different Brand Products. ExxonMobil's intentional and active concealment of its Product Harmonization Program and simultaneous promotion of its dual brand strategy was carried out by Defendant with the

12

intent to directly or indirectly induce members of the public to continue purchasing the Lubricant Products even though those products no longer possess the distinct superior characteristics and/or formulations that existed prior to the Merger.

34. ExxonMobil knew and intended that its fraudulent and deceptive advertising, marketing and promotion of the dual brand strategy together with its intentional and active concealment of the Product Harmonization Program in the course of ExxonMobil's trade and business advertising was likely to deceive and did deceive the public as to the ingredients, characteristics and benefits of purchasing the more expensive Lubricant Products. As ExxonMobil's own detailed research reveals, Plaintiff and the Class purchased the Lubricant Products in reliance on ExxonMobil's false and deceptive advertising and marketing of the distinctions between the Lubricant Products and the Different Brand Products even though no such distinctions exist. Plaintiff and the Class were actually deceived into paying more for the Lubricant Products because of ExxonMobil's perpetuation through its advertising and marketing of the non-existent distinctions between the two.

35. Plaintiff and each member of the Class have suffered actual damage proximately caused by ExxonMobil's deceptive Product Harmonization Program. In reliance on ExxonMobil's false and deceptive perpetuation of the distinctions between the Mobil Oil and Exxon brand products that ceased to exist after the implementation of the Product Harmonization Program, Plaintiff and the Class continued paying more money for the Lubricant Products even though they were identical to the lower priced Different Brand Products.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## PRAYER FOR RELIEF

1. As to the First Cause of Action: For a permanent injunction requiring

ExxonMobil to cease employing its Product Harmonization Program in the course of its advertising, marketing and sale of the Harmonized Products;

2. As to the Second Cause of Action: For damages suffered by Plaintiff and the Class as a result of ExxonMobil's unfair and deceptive acts and practices;

3. As to the First and/or Second Causes of Action: An order certifying the Class under Rule 23 and requiring ExxonMobil to pay into a fluid common fund all monies acquired by ExxonMobil from Plaintiff and the Class by means of any act or practice declared by this Court to be a deceptive, fraudulent or unfair practice;

4. For attorneys fees' and costs;

5. For such other and further relief as the Court may deem proper.

Respectfully submitted

Jeffrey Schultz, Esq.,
Schultz & Murphy
26 E. Washington
2d Floor,
Belleville, IL 62220

Attorney for Plaintiff