UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ADAM P. MEYENBURG ) | |
| Individually and on behalf of all others ) | |
| Similarly situated, ) | Case No.  3:05-CV-15 |
| ) | |
| Plaintiff, ) | CLASS ACTION |
| ) | |
| v. ) | |
| ) | |
| EXXON MOBIL CORP., ) | |
| ) | |
| Defendant. ) | |

## OBJECTION TO CLASS ACTION SETTLEMENT

NOW COMES class members David Pentz of One Highland Road, East Stroudsburg, PA 18301, and Guy Thrasher, 8605 Deming, Affton, MO 63123, and object to the proposed class action settlement and request for attorney's fees in this action, for the following reasons.  Mr. Pentz and Mr. Thrasher purchased Lubricant Products between April 1, 2002 and May 23, 2005.  Objectors Pentz and Thrasher intend to appear and argue at the fairness hearing scheduled for September 15, 2005 through their undersigned counsel.

**I.     The Notice of Proposed Class Action Settlement Does Not Comply
         With Fed. R. Civ. P. 23(h).**

Fed. R. Civ. P. 23(h)(1) requires that notice of a motion for attorney's fees "must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."   Here, the Notice of Proposed Class Action Settlement and Settlement Hearing states only as follows with respect to class counsel's fee request:

> If the Court approves, ExxonMobil will pay Plaintiff's Counsel the amount determined by the Court for their legal fees and expenses in connection with prosecuting the Litigation, as well as any named plaintiff incentive awards. Any award of attorneys' fees, expenses, and named plaintiff incentive awards will be paid out of, and thereby reduce accordingly, the $6,000,000 Cash Settlement Fund.

This notice provides absolutely no basis for determining what amount of fees class counsel will request, except perhaps to indicate that the fees will not exceed $6 million. With no further detail about the amount or basis of class counsel's attorney's fee request other than the tautology that ExxonMobil will pay the amount the Court approves if the Court approves it. The notice clearly violates the requirements of Rule 23(h) and deprives all class members of a meaningful opportunity to evaluate and object to class counsel's fee request.

**II.     The Notice Is Defective Because It Does Not
         Contain a Description or Recitation of the Release.**

Rule 23(e) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement. The Notice employed in this case fails to comply with this rule. Nowhere in the Notice is the release which absent class members are giving to the Defendant recited or described. Furthermore, the Settlement Agreement, which presumably contains the release, is not available on the website to which class members are referred by the Notice. This is inexcusable, in light of the fact that other case documents are available there, and that class action settlement websites routinely provide links to the Settlement Agreement as well as other important case documents, such as the order of preliminary approval and the complaint.

In order for a class member to find out what claims and rights he or she is giving up in exchange for the settlement relief, they are invited to visit the courthouse in East St.

Louis. "This Notice is Only a Summary of the Proposed Settlement. The full terms are set forth in detail in the Parties' Settlement Agreement, which is on file in the Office of the Clerk, Melvin Price Federal Courthouse, 750 Missouri Avenue, East St. Louis, Illinois 62201." This cannot be found to be a "reasonable manner" of notice under Rule 23(e). The prospect of hundreds of thousands of absent class members traveling at their own expense to East St. Louis to find out what they are giving up in exchange for a $1.00 coupon cannot be preferable to the simple alternatives of posting the Settlement Agreement on the website, or just quoting the release language in the Notice, which is the accepted practice in almost every other class action settlement in the United States over the past two decades. Omission of the release language from the Notice and website renders the Notice an impermissible violation of Rule 23(e), and is insufficient to bind absent class members to the terms of the settlement.

### III.     The Settlement Coupons Have Little Or No Value.

The coupons for $1.00 off future purchases of Exxon or Mobil motor oil are of very little value to class members, and certainly are worth less than their face value. In Re Mexico Money Transfer Litig., 267 F.3d 743 (7th Cir. 2001). In Mexico Money, objectors challenged the adequacy of a coupon settlement that was alleged to have a face value of $400 million. The Seventh Circuit questioned this valuation:

> And the coupons, too, have value. Not the $400 million face value, surely. Experts estimated that about half the coupons would be claimed, and 20% to 30% of those claimed would be used, implying a net value of $40 million to $60 million. That conclusion is supported by the analysis of other coupon settlements and some survey research exploring the likely behavior of this class.

Id. at 748. The coupons must be further discounted because they may be used only against a future purchase of two products manufactured by the Defendant. As such, the

coupons represent a promotional program that will likely increase profits to the Defendants by boosting sales of these products. This limitation must be taken into account when valuing the coupons.

This conclusion is further reinforced by the Defendant's agreement to mail the unclaimed coupons to its general consumers, making the coupons no different from a coupon or flier inserted in the Sunday newspaper. Defendant should not be credited for the value of a marketing campaign that it would have undertaken in the absence of this case, and which will result in a net profit to the Defendant.

### IV. Attorney's Fees Should Be Based Upon a Lodestar/Multiplier, And Limited to A Reasonable Percentage of Claims Filed.

In the absence of adequate notice of class counsel's attorney's fee request, Objectors can only surmise what class counsel will request as compensation for their efforts in this litigation. Class counsel will likely value the settlement as the $6 million cash fund plus the $4 million coupon fund, without discounting for the probable number of unclaimed and unused coupons, as well as the fact that the coupons may not be stacked. Class counsel will also likely attempt to assign a value to the Business Practices Relief, and will add that assigned value to the $10 million cash and coupon funds, to produce some total settlement value greater than $10 million. Class counsel will then request a fee that is 30-33% of the total projected settlement fund, with the result that class counsel's fees will consume the majority of the cash settlement fund, the only real compensation in the entire settlement.

This very Court has recently held that such a method of calculating attorney's fees is improper. In <u>Synfuel Technologies LLC v. Airborne Express, Inc.</u>, No. 02-cv-324-DRH (a copy of this Memorandum and Order is attached hereto as <u>Exhibit A</u>), Judge

4

Herndon refused to base attorney's fees on the estimated value of injunctive relief, valued the coupon portion of the settlement based upon the number of claims filed, and ultimately awarded an attorney's fee of twice class counsel's lodestar. Objectors submit that this Court should reach the same result here. See also Strong v. Bellsouth Telecommunications, Inc., 137 F.3d 844 (5th Cir. 1998); Staton v. Boeing Co., 327 F.3d 938 (9th Cir. 2003).

In Boeing, the Court quite clearly stated its core holding at the outset of the decision:

> To assess the reasonableness of the attorneys' fees awarded by the decree, the district court compared the amount of the fees to the amount of the putative common fund and determined what percentage of this fund the fee amount constituted. This comparison is a permissible procedure when a court is determining the reasonableness of fees taken from a genuine common fund. In conducting the comparison, however, the district court included in the value of the putative fund the parties' inexact, and quite probably inflated, estimate of the value of the proposed injunctive relief. Such relief should generally be excluded from the value of a common fund when calculating the appropriate attorneys' fees award, as the benefit of that relief to the class members is most often not sufficiently measurable… We hold further, therefore, that parties ordinarily may not include an estimated value of undifferentiated injunctive relief in the amount of an actual or putative common fund for purposes of determining an award of attorney's fees.

Id. at 945-46. Valuation of injunctive relief is nothing more than a guesstimate of future benefit, based upon numerous assumptions that may ultimately prove unjustified. It is not a reliable quantification of a presently measurable benefit. It is for this reason that cases like Boeing and Strong have established a bright line rule that injunctive relief should not be included in a putative common fund for the purpose of calculating attorney's fees.

The settlement appears to anticipate that each claimant's *pro rata* share of the cash fund will be less than $1.00. Otherwise, there would be no reason to ask claimants if

they would prefer to receive coupons in lieu of their *pro rata* share of the cash fund. However, if class counsel's fee were limited to a reasonable percentage of the cash fund, or $1.5 million (25%), then there would be $4.5 million left over for the class members who file claims. Even assuming that 50,000 claims are filed, a very high number historically for this kind of settlement, a $4.5 million fund would deliver $90 per claimant. Even with an unthinkable 500,000 claims, the settlement fund could provide $9.00 per claimant, still better than 5 $1.00 coupons. While this may not seem like a very high recovery in a case where each class member suffered damages in an amount greater than $75,000 (see Complaint at ¶4, jurisdiction based upon 28 USC §1332), it is certainly better than 5 $1.00 coupons, and would provide class members with at least some real compensation for the release of their claims.

Any value placed upon the coupon fund should be limited to the value of the coupons that are actually claimed by class members. The Court should not assign any value to coupons that remain unclaimed and are distributed to the Defendant's general customers as a promotional program. If class counsel's fees are limited to a reasonable percentage of the cash fund, then few if any of the coupons will be claimed, since all rational class members would prefer a cash recovery of even $10 over five $1.00 coupons good only toward two lines of Defendant's motor oils. In <u>In re Compact Disc Minimum Advertised Price Antitrust Litig</u>., 292 F. Supp. 2d 184, 189-190 (D. Me. 2003) ("<u>CD Case</u>"), the court stated:

> I am aware of the criticism that has been leveled at class settlements where the cash goes to the lawyers and the class members get only a coupon of dubious value… Recognizing that percentage of funds is the preferred method of assessing fees in a settlement like this, with lodestar analysis providing only a check, I can effectively gauge appropriate attorney's fees only if I know the total value of the settlement. But although I am

6

> satisfied that the coupon settlement has value to the class, I am not confident of the redemption rate that has been projected and thus of the settlement's total value.

Id. Similarly, in In re Excess Value Ins. Coverage Litig., 2004 U.S. Dist. LEXIS 14822 (S.D.N.Y. 2004), the court followed the reasoning of CD Case in holding that:

> The percentage of Settlement approach cannot be reasonably employed at this point because the Settlement's actual value to the Class is unclear and cannot accurately be assessed until the rate at which Class Members redeem UPS Vouchers is known… "Particularly where the common benefits are in the form of discounts, coupons, options or declaratory or injunctive relief, estimates of the value or even the existence of a common fund may be unreliable, rendering application of any percentage-of-recovery approach inappropriate. Where there is no secondary market for coupon redemption, the judge can conclude that the stated value of the coupons … does not provide a sufficiently firm foundation to support a fee award…"

Id. at *58 (quoting Manual for Complex Litigation Section 14.121). Clearly, the preferred practice, and the emerging consensus, is that courts should defer valuation of a claims-made or coupon settlement until information on the number of coupons claimed and/or redeemed is available.[1]

The recently-enacted Class Action Fairness Act also requires that attorney's fees awarded on a percentage basis be based upon "the value to class members of the coupons that are redeemed." 28 U.S.C. §1712, App. at 197. In the Findings and Purposes section of that Act, Congress stated its concern that "class members often receive little or no benefit from class actions, and are sometimes harmed, such as where (A) counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value." App. at 199. Therefore, the Act provides:

---

[1] This settlement involves both claims and coupons. There is uncertainty about both how many class members will claim the coupons, and how many of the claimed coupons

7

> If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fees award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed.

This action was filed on January 12, 2005, just a month before the Class Action Fairness Act was enacted. Four weeks should not make the difference between a windfall fee and a fair and reasonable one. This case should be governed by the fee principles announced in the CAFA, even though it may not technically be governed by it.

Even if class counsel were to request only 25% of the cash fund, or $1.5 million, even that fee would appear to be excessive given that this action was filed on January 12, 2005, just six months ago. As demonstrated by the Airborne case cited above, it is impossible for a firm to generate a lodestar of even $200,000 in such a short time. Indeed, class counsel in Airborne generated a lodestar of only $300,000 in three years. Class counsel here cannot have a lodestar for this case of more than $100,000. Therefore, a fee of $1.5 million would represent a multiplier of 15 or more, a number that is excessive in any Circuit, let alone in the Seventh Circuit, where a multiplier of 2 has been termed an appropriate "ceiling." See Cook v. Niedert, 142 F.3d 1004, 1013 (7th Cir. 1998). Judge Herndon awarded class counsel a multiplier of 2 in Airborne, holding that that is the ceiling in this Circuit. See Airborne at 22.

Even if class counsel were to limit their fee request to 25% of the cash settlement fund, or $1.5 million, that amount would surely be excessive when cross-checked against their lodestar. It is overwhelmingly clear that any fee award in excess of $1.5 million would compound the excessiveness to the point of absurdity and unconscionability.

---

will actually be redeemed. This requires a "double discounting" of the numbers projected by the parties.

Objectors urge this Court to comply with controlling precedent and the Class Action Fairness Act, and to award a fee that is no more than a reasonable percentage of the cash settlement fund, to assign no value to injunctive relief, and to cross-check any award calculated as a percentage against class counsel's lodestar generated in this case.

          Objectors David Pentz
          And Guy Thrasher,
          By their attorneys,


          s/ *J. Scott Kessinger*
          J. Scott Kessinger
          IL Bar # 06240213
          7304 Michigan Avenue
          St. Louis, MO 63111
          (314) 369-5115
          Fax: (314) 754-8370

          John J. Pentz
          CLASS ACTION FAIRNESS GROUP
          2 Clock Tower Place
          Suite 260G
          Maynard, MA  01754
          (978) 461-1548
          Fax: (707) 276-2925

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on August 8, 2005 he served a true copy of the foregoing document by first class mail on each of the counsel listed below.

| | |
|---|---|
| Michael A. Havard | Stephen J. Harburg |
| Provost Umphrey | O'Melveny & Myers LLP |
| 490 Park Street | 1625 Eye Street, NW |
| PO Box 4905 | Washington, DC  20006 |
| Beaumont, TX 77704 | |

                                              s/ *J. Scott Kessinger*
                                              J. Scott Kessinger