IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ADAM E. MEYENBURG, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>EXXON MOBIL CORPORATION,<br><br>  Defendant. | )<br>)<br>)<br>)<br>)  Case No. 3:05-cv-15-DGW<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER**

This matter is before the Court on the Motion to Approve Consent Judgment (Plaintiff's Motion for Final Approval of Class Action Settlement) filed by the plaintiff, Adam E. Meyenburg, on September 8, 2005 (Doc. 33). The motion is **GRANTED**. A Fairness Hearing was held on September 15, 2005. Attorneys Jeffrey Schultz, Jeffrey Harris, Michael Havard, and John Fitzgerald appeared on behalf of the named plaintiff, Adam P. Meyenburg. Attorneys Stephen Harburg, Patrick Rizzi, and Edward Cohen appeared on behalf of the defendant, Exxon Mobil Corporation. Attorneys J. Scott Kessinger appeared for objectors David Pentz and Guy Thrasher. Attorney N. Albert Bacharach, Jr. appeared for the objectors Brenda Matthews, Melissa Nolett, Paul Redd, and Thomas Schultz.

After reviewing the submissions of the parties, including the Settlement Agreement ("Settlement") (Exhibit A), the submissions of the objectors, the requests for opt-out, and after holding a Fairness Hearing, the Court hereby:

1. Makes final its conditional certification of the class;

2. Holds that the Settlement is lawful, fair, reasonable and adequate; and

3. Grants final approval to the Settlement.

The Court addresses its reasons for approval below. The plaintiff's application for attorney's fees, costs, and named plaintiff incentive awards (Doc.34) will be addressed in a separate Order.

## BACKGROUND

Plaintiff's class action allegations stem from the merger of defendant, Exxon Mobil Corporation ("Exxon") and Mobil Corporation ("Mobil") (Doc. 1, p. 3). Prior to the merger, each company sold competing automotive, commercial and industrial lubricant products. Additionally, each company blended it own products (including multi-grade motor oil), using different blend plants and formulas to produce its own lubricant products. Further, each company sold these products throughout the United States, including Illinois (Doc. 1, p. 3). Prior to the merger, Mobil's lubricant products were advertised and marketed as having superior characteristics compared to many similar products available to the public. As a result, Mobil products were usually more expensive than the products offered by its competition, including Exxon. The typical purchaser of Mobil products was willing to pay more for a "high-end" products (Doc. 1, p. 4). Additionally before the merger, Exxon marketed, advertised and sold its products to purchasers other than those targeted by Mobil. Exxon targeted those individuals who considered their vehicles as solely a mode of transportation. Stated differently, the typical Exxon purchaser spent less money on the purchase of oil because the Exxon brand was less expensive (Doc. 1, p. 4).

During and after the merger, ExxonMobil conducted extensive research throughout the global market regarding the habits of those customers who purchased each brand. (Doc. 1, p. 4). As a result of the research, ExxonMobil determined that each brand had a strong customer loyalty (Doc. 1, p. 4). Specifically, ExxonMobil concluded that customers who bought Mobil

Oil products were willing to pay more for that brand because it was associated with higher performance and quality, while Exxon brand purchasers were usually not willing to pay such a premium (Doc. 1, p. 4).

ExxonMobil adopted a dual-brand strategy as a result of the market research and other factors (Doc. 1, p. 4). The dual-brand strategy was calculated to satisfy the demands of both types of purchasers. As part of their strategy, ExxonMobil used an advertising strategy that was specifically designed to explain the difference between the two products that would be sold to retail, commercial, and industrial purchasers (Doc. 1, p. 4-5). ExxonMobil promoted the two brands as being distinctly different. Almost in all circumstances, Mobil products were portrayed as "performance" products and Exxon products were portrayed as "value-driven" (Doc. 1, p. 5). ExxonMobil priced the two brands differently based on its advertised difference between the two brands. ExxonMobil sold the "Lubricant Products"[1] at a higher price because they were deemed to have a higher performance than the "Different Brand Products"[2] but neglected to inform customers, that the two products were identical (Doc. 1, p. 5). This dual-brand strategy was implemented in the United States and included Illinois. The plaintiff alleges that the dual advertisements were false and that ExxonMobil failed to inform its customers that both products were identical and the same.

---

[1]The Lubricant Products (higher priced products) are :Mobil Drive Clean 5W-30, 10W-30, 10W-40, 20W-50, 5W-20, HD 30, and HD 40, Mobil Clean, Mobil Multi Purpose ATF; Mobil ATF +3; Mobiluble HD LS; Mobil Delvac Hydraulic 10W; Mobiltrans HD 10, HD 30, and HD 50; Mobilfluid 424; Mobilube HD Plus 80W-90 and HD Plus 85W-140; Mobilube HD 80W-90 and Hd 85W-140; Mobilgear 626, 627, 629, 630, 632, 634, and 626; Exxon Nuto H 32, H 46, H 68, H 100, and H 150; Mobilux EP; Mobilith AW2; Mobil Pegasus 505; Mobil Almo 535, 529, and 532.

[2] The "Different Brand Products" were lower priced and bore the Exxon name.

Plaintiff alleges that ExxonMobil attempted to conceal its intent by requiring delivery drivers to use clipboards to prevent customers from seeing that a previous delivery was sold as Exxon at a lower price than the Mobil "product" for which the current customer was paying a higher price (Doc. 1, p. 6). Plaintiff also alleges that the deliveries of "Exxon" and "Mobil" were scheduled separately so that the delivery driver could change the label between deliveries (Doc. 1, p. 6). If a customer had questions regarding the differences between the two products, they were referred to the public relations department of ExxonMobil. (Doc. 1, p. 6-7).

Distributors were required to maintain detailed records to account to ExxonMobil how much bulk product was sold as "Exxon" and how much was sold as "Mobil" (Doc. 1, p. 7). Plaintiff alleges that members of the class were charged more for the Lubricant Products ("Mobil") than for the Different Brand Products ("Exxon"). Lastly, plaintiff alleges that as a result of this program, ExxonMobil unlawfully charged and collected from plaintiff and other class members more money for the Lubricant Product ("Mobil") than for the Different Brands Products ("Exxon") (Doc. 1, p. 7).

Plaintiff filed his complaint on January 12, 2005 (Doc.1). Plaintiff's complaint seeks a judgment enjoining ExxonMobil from continuing to engage in allegedly false, deceptive, unfair, and unlawful business acts and practices in connection with the marketing, advertising, and sale of its lubricant products, and an award of money damages on behalf of past and indirect purchasers of such products. On January 13, 2005 a Motion to Certify Class was filed by the named plaintiff, Adam P. Meyenburg (Doc. 2). On January 13, 2005 the class plaintiff also filed a Joint Motion for Settlement Approval on a Preliminary Basis (Doc. 4) and a Motion for a Hearing on Class Certification and Preliminary Approval of Settlement (Doc. 6). On February

3, 2005 this matter was assigned to the undersigned for final disposition (Doc. 17).

On April 18, 2004 a hearing was held on the Motion to Certify the Class and the Motion for Preliminary Approval of the Settlement.  On April 20, 2005, this Court granted the Joint Motion for Preliminary Approval of Class Action Settlement (Doc. 23) and on April 21, 2005 this Court granted the Motion for Conditional Class Certification.  On April 22, 2005 the Court set a Final Fairness Hearing which was held on September 15, 2005.

## DISCUSSION

**JURISDICTIONAL STATEMENT**

This Court has jurisdiction based on 28 U.S.C. § 1332, diversity of citizenship.  The amount in controversy exceeds the sum or value of $75,000 exclusive of interests and costs and is between citizens of different states.  The plaintiff is a citizen of Illinois.  Defendant is a New Jersey corporation with its principal place of business in Texas.   Defendant, at all times relevant to this lawsuit, has done business in the State of Illinois and in this judicial district.

**RULE 23 (e)(1)(C) STANDARD**

    **A.  EVALUATION OF THE SETTLEMENT AGREEMENT**

Federal courts favor the settlement of class actions.  E.g., Isby v. Bayh, 75 F.3d 1191, 1196 (7th Cir. 1996).  However, a Court must "exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions."  Reynolds v. Beneficial National Bank, 288 F. 3d 277, 279-80 (7th Cir. 2002).   Additionally, Federal Rule of Civil Procedure 23(e)(1)(C) requires a court to make a finding that the settlement is "fair, reasonable, and adequate."  In making this determination, the Court considers a myriad of factors relating to the merits and complexity of the claim, the circumstances of the settlement, and any objections made to the

settlement.  Mangone v. First USA Bank, 206 F.R.D. 222, 224 (S.D. Ill.2001).  See, e.g., E.E.O.C. v. Hiram Walker & Sons, Inc., 768 F.2d 884, 888-89 (7th Cir. 1985).   The factors to be considered are well-established: (1) the strength of the plaintiff's case compared to the amount of the settlement offer; (2) the complexity, length, and expense of the litigation; (3) whether the settlement was the product of collusion; (4) the degree of opposition to the settlement; (5) the opinion of competent counsel as to whether the settlement was fair, reasonable and adequate; and (6) the stage of the proceedings and the amount of discovery conducted.  Mangone, 206 F.R.D. at 224; Isby, 75 F. 3d at 1199.  The Court must consider these "factors" in their entirety while evaluating the fairness of the settlement.  Armstrong v. Board of Directors of the City of Milwaukee, 616 F.2d 305, 315 (7th Cir. 1980), *overruled on other grounds* by Felzen v. Andreas, 134 F.3d 873 (7th Cir. 1998).   A settlement is a compromise and will not be considered a total win for either side.  In Re Mexico Money Transfer Litigation, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000).  The Court does not decide whether the settlement reached between the parties is the best deal or whether the class would have received the same benefit from the settlement as they would have recovered from a trial at which they were victorious. Id.   The Court's responsibility is to determine whether the proposed settlement is fair, reasonable and adequate.   The Court should also consider any prospective injunctive relief in addition to any tangible benefits (such as cash or coupons) conveyed to the class.  See  In Re Mexico Money Transfer Litigation, 267 F. 3d 743, 748-49 (7th Cir. 2001).

On September 15, 2005, pursuant to Federal Rule of Civil Procedure 23(e), the Court held a fairness hearing.  The Court has also considered all the written and oral objections made to the Settlement, and permitted all interested parties to be heard at the Fairness Hearing.  After

considering all these factors, the Court finds, as explained below, that the Settlement is fair, adequate and reasonable.

As stated *supra*, the Court must balance six factors when assessing the fairness, reasonableness and adequacy of the settlement.

**1. The strength of plaintiff's case as compared to defendant's offer.**

In analyzing this factor, this Court compares the benefit to the class under the proposed settlement against the likely benefit the class would have received after a successful trial on the merits. See, Mangone, 206 F.R.D. at 225 (other citations omitted). "A settlement is fair to the plaintiffs in a substantive sense . . . if it gives them the expected value of their claim if it went to trial, net the costs of trial." Mars Steele Corp. v. Continental Ill. Nati'l Bank & Trust Co. of Chicago, 834, F. 2d. 577, 682 (7th Cir. 1987)(other citations omitted). This first factor has been deemed the most important by the courts. See Hiram Walker, 768 F.2d at 889.

Under the settlement, ExxonMobil will provide $6,000,000 as a cash payout for class members who submit valid and timely claims, attorney's fees, and named plaintiff incentive awards. ExxonMobil will also distribute $4,000,000 in transferrable $1 coupons which will be redeemable on future purchases of five quart motor oils at specified national merchandisers. If a class member has a claim of less than $1, the settlement provides them with a choice of cash or one or more coupons (Class members may receive up to six $1 off coupons). Coupons not claimed will be mailed to direct target customers. All $4,000,000 worth of coupons will be distributed. Furthermore, Exxon Mobil has incurred the cost of the nationwide notification program to the public regarding the settlement. The cost, which would otherwise have been bourne plaintiff's, is approximately $1.2 million. Additionally. ExxonMobil has previously

incurred and will continue to incur the costs associated with the administration and implementation of the settlement. Had this lawsuit been fully litigated and the plaintiffs prevailed, the cost of the nationwide notice and the costs of the administration and implementation of the settlement would have been deducted from the recovery of the class. Mangone, 206 F.R.D. at 225.. The costs for the notice and administration will not come out of the cash or coupon fund. Moreover, ExxonMobil has agreed to modify its business practices for three years. This modification specifically encompasses and addresses the challenged conduct.

     Absent the settlement, it was doubtful that a class would have been nationally certified because this is a consumer class action. The laws and statutes of the 50 states that govern consumer actions are different. Some state's laws require reliance on advertising or promotion be proven as the reason the consumer purchased the product. Therefore, without the settlement, it is unlikely that national relief would be granted. Another hurdle faced by the plaintiffs is that they would have not be able, had ExxonMobil contested the issue at trial, to prove that the two lubricant products were identical. Oil is an organic product that varies whenever it is blended with different base stocks. Additionally, plaintiffs may have a problem with proof at trial due to the manner in which ExxonMobil distributes its oil. Some distributors only carry one brand and not the other. Some large national customers directly negotiate with ExxonMobil for the sale of ExxonMobil products. Sometimes in these situations, the price has nothing to do with the brand. Therefore, the accounting methods plaintiffs would have had to employ would have been extremely difficult to prove. Calculation of damages would also have been problematic because some bulk deliveries were not labeled as one brand or the other. The oil wasn't labeled until it was actually sold to a customer. This would require the Plaintiff to use very costly

accounting methods. The plaintiffs may further have a problem with a jury distinguishing that difference when their own experience might include visiting a store and buying the "store brand" of an item that is actually produced by a well-known company. After reviewing hundreds of thousands of documents plaintiffs only found one document where ExxonMobil actually compared the two products. Therefore, there was a lack of direct comparison between the two products to put into evidence in a trial. An additional problem exists in that there is no way to tell if an auto parts store or any retail outlet purchased both kinds of oil but decided to sell them at the same price to the ultimate consumer and "eat" the cost differential on their own. Lastly, ExxonMobil claims that it offered extra services to purchasers of the Mobil oil and therefore the price increase was justified. Examples of the extra services includes a distributor receiving more visits from the salesman, more advertising for Mobil products, promotions, and special services for fleet owners. After reviewing this agreement in light of the obstacles to success on the merits and the difficulties in proof as proffered by class counsel, the Court concludes that there is a substantial benefit to the class.

    **2. Complexity, length, and expense of further litigation.**

Defendant denies all the allegations in the Complaint and would vigorously defend the case. This case involves thirty-eight different lubricant products, class members from around the country who would invoke the laws of various jurisdictions. Further litigation would require depositions, the retention of accounting experts, chemists and other experts. Motion practice relating to class certification, discovery, and motions to dismiss and motions for summary judgment would be inevitable. Plaintiffs might also have to confront any appeals. Litigation of this case would involve years and a trial would likely take weeks. The remaining burden,

expenses, and risks for the plaintiff would be substantial. Settlement of this case is comparable, if not superior, to that which plaintiffs might have achieved at trial. Mangone, 206 F.R.D. at 226; Isby 75 F. 3d at 1199.

**3. Collusion between the parties.**

The Court finds that there is no evidence of collusion between the parties. The settlement agreement was reached three years after plaintiff began investigating the case and after a lawsuit was brought in the state of California, in the Superior Court for Alameda County (Pascual v. ExxonMobil Corporation, RG03096045). The California case was litigated for two years, discovery was exchanged and depositions were taken. The attorneys who brought the California case were the only attorneys who investigated the case and brought suit. This is not a situation where various groups of plaintiff's attorneys brought suit and the defendant attempted to create a bidding war and decided to settle with the group of attorneys who would settle for the least amount. Additionally, defendant did not negotiate fees with class counsel so there is no conflict of interest. The Settlement is the result of arms-length negotiation by experienced counsel.

**4. Opinion of competent counsel.**

Class counsel and counsel for ExxonMobil have been involved in litigating the issues raised in the Complaint for years. As stated *supra,* the California litigation involved extensive discovery and motion practice. Class counsel and counsel for ExxonMobil are both very experienced in class action litigation and had more than enough information to evaluate and negotiate the settlement. Class counsel, Jeffrey Harris, has prior experience as Assistant Director for marketing abuses at the Federal Trade Commission in the area of consumer fraud

(Tr. 29).  Class counsel Harris is also experienced in class actions cases, being involved most recently in three or four class actions suits between 2004 and 2005 (Tr. 29).  Jeffrey Harris' co-counsel, Michael Havard, and his firm, handled tobacco class actions litigation for many years (Tr. 29-30).  Class counsel Harvard has settled numerous class action litigations, including a recent Firestone Tire case (Tr. 30).   Class counsel's lead counsel in California, John Fitzgerald, has handled consumer actions and class actions against such companies as Pond and Disney (Tr. 30).   The settlement was reached after lengthy and extensive negotiations.   The Court concludes that class counsel have appeared successfully in many class action cases.  No one is suggesting, nor is there any basis to find, that class counsel were unwilling or unable to proceed to trial.  Counsel for both sides represented to the Court that the negotiation process in this case was difficult, contentious and protracted and that negotiations almost broke off several times.  Furthermore, in their opinion, the settlement is fair, reasonable and adequate.   Significant weight is placed by this Court on the unanimously strong endorsement of this settlement by plaintiff's counsel.  See Isby, 75 F.3d at 1200; In re Mexico Money Transfer Litigation, 164 F. Supp. 2d at 1021.

    **5. Reaction of class members.**

    The settlement is strongly supported by class members as evidenced by the fact that so few potential class members sought to opt out or objected.   Fewer than fifty (50) persons have opted-out of the settlement and only six individuals formally filed objections with the Court.  An additional three (3) individuals have submitted objections to class counsel but these objections were not filed with the Court.   This is a small number in light of the fact that this is a nationwide class action case, which potentially has thousands of members.  The number of

objectors is very small, if not minuscule, especially when compared to the class as a whole.  The Court concludes that such overwhelming support by class members is strong circumstantial evidence that the settlement is fair.  Mangone, 206 F.R.D. at 227;  In re Mexico Money Transfer Litigation, 164 F. Supp. 2d at 1021.

**6. Stage of the proceedings.**

As stated *supra,* investigation and extensive discovery was conducted and class counsel reviewed thousands of documents.  Motion practice was conducted in the California case for almost three years before the parties entered into settlement discussions.  Depositions were taken of numerous distributors.  Settlement discussions went on for almost a year before a settlement was reached.  Settlement discovery was also conducted.  The Court is satisfied that the discovery and investigation that was conducted in this case by class counsel prior to entering into settlement negotiations was both extensive and thorough.  Mangone, 206 F.R.D. at 226;  In re Mexico Money Transfer Litigation, 164 F. Supp. 2d at 1022 .

**B. ANALYSIS OF OBJECTIONS TO THE SETTLEMENT**

The Court has carefully reviewed the written objections filed, as well as the oral objections and arguments made at the Fairness Hearing.  The Court determines that the objections filed do not warrant denying final approval of the settlement.

**1. Objections of Nolett, Redd, Matthews, and Schultz ("Nolett objectors')**

The Nolett objectors were represented by N. Albert Bacharach and William Kopis.  Attorney Bacharach was heard at the Fairness Hearing.  The Nolett objectors had three objections: (1) the notice was defective; (2) the coupons have little or no value; and (3)

attorney's fees may be unreasonable.[3]

The notices that were published specifically stated that all objections should be postmarked on or before August 13, 2005 to class counsel and counsel for defendant. The notice also specifically provided that any objection must also be received by the Court by August 13, 2005. August 13, 2005 was a Saturday. The Nolett objections were filed electronically on Monday, August 15, 2005 at 5:13 p.m. The objections were to be filed by a date certain, August 13, 2005. No computation of time was necessary because the objections were due by a date certain. Additionally, the objections were electronically filed. Pursuant to the Electronic Filing Rule 3 of the Southern District of Illinois, the filing of an electronic document does not alter the filing date for the document. Filing must be completed by midnight central time (local time) in order to be considered timely filed on that date. The Nolett objections were late and will not be considered by the Court. In the alternative, the Court will address the substance of these objections *infra*. However, the substance of the written Nolett objections are identical to the Pentz objections which will be addressed *infra.*.

**2. Objections of Pentz and Thrasher ("Pentz objectors")**

Objectors David Pentz and Guy Thrasher were represented by Scott Kessinger and John Pentz. Attorney Scott Kessinger was heard at the Fairness Hearing. The Pentz objectors raised four objections to the settlement: (1) the notice of the proposed class action did not comply with Rule 23(h); (2) the notice was defective because it did not contain a description or recitation of the release; (3) the coupons have little or no value; and (4) attorney's fees should be based on a Lodestar/Multiplier and limited to a reasonable percentage of the claims filed. As stated *supra*,

---

[3] It should be noted that these same objections were raised by the Pentz objectors.

attorneys fees will be addressed in a separate order.

**(a) objections to notice.**  The Pentz objectors argued that the notice of the settlement does not comply with Federal Rule of Civil Procedure 23(h)(1) because the notice of attorney's fees must be directed to the class in a reasonable manner.  They also argued that the notice was defective because it did not contain a description or recitation of the release.  The Court finds these objections to be meritless.  This Court has previously approved the notice and found it sufficient (Doc.23).  The Court concludes that notice directed to class members was the best practicable notice under the circumstances.  Mangone, 206 F.R.D. at 231.  It would have been prohibitively expensive to include the entire settlement agreement in the published notice.  The notice directed potential class members to various other sources for more information.  The long form notice which could be found on the www.lubricantsettlement.com website, informed class members that counsel would seek reasonable attorney's fees and expenses.  It also stated that the named plaintiff would receive incentive awards and that fees would be paid out of, and thereby reduce, the $6 million dollar cash settlement fund.  Class members could also have called the toll free number (1-800-251-9830), written to the Lubricant Products Class Action Settlement in care of a P.O. Box in Merrick, New York, at the address listed, or contacted class counsel at the address or phone number provided.  The description of release of rights being relinquished was also available on the website in the long form, from the 800 number, from the P.O. Box in Merrick New York or by telephoning class counsel at the numbers listed (one of which was an 800 number).  See, Mangone 206 F.R.D. at 233-234 (citations omitted).  Accordingly this objection is overruled.

**(b) the settlement coupons have little or no value.**

The Pentz objectors argue that the coupons have little or no value. The Court finds this objection to be without merit. The Settlement provides for $4,000,000 in coupons. The coupons are being offered as an option to class members whose cash award may be less than one dollar. However, no class member is required to accept a coupon. Each class member may receive a cash award. The coupons are freely transferable and are valid for 6 months after the date they are issued. The coupons will be distributed to class members first. Any remaining coupons will be distributed by direct targeted mailing to customers. No coupons will be left over or distributed in a Sunday newspaper. Even assuming that the value of the coupons is discounted by 80%, the value attributed to the coupons would be approximately $800,000. Therefore, the Court finds that the coupons do confer a benefit upon the class. See In Re Mexico Money Transfer Litigation, 267 F. 3d 743, 748 (7th Cir. 2001) (affirming class action settlement compromised, in part, of coupons, noting that coupons "have value" and are "transferable"). Although the Court is discounting the value of the coupons in an effort to insure that the settlement is not overvalued, it is not doing so based upon Pentz Objectors Exhibit #1.[4] The Court conducted its own independent evaluation.

**(c) injunctive relief has no real value.** At the outset, the Court notes that neither the Nolett objectors nor the Pentz objectors objected to the value of the injunctive relief in their written objections (See, Docs 28 and 29). The objection to the value of the injunctive relief appears to the Court to be an argument against the award of attorney's fees based on the request for a percentage of the common fund. The Pentz objectors also argue that the injunctive relief

---

[4] Pentz Objectors Exhibit #1 is a filing from a class action lawsuit in the Southern District of New York entitled Joint Report Relating to Conclusion of Voucher Redemptions.

should not be a determinative factor in awarding attorney's fees but rather a relevant factor in valuation.

The objection to the value of the injunctive relief was raised for the first time, orally, at the Fairness Hearing. The objectors argue that the injunctive relief has no real value until the defendant implements a change to their business practices.

Under the terms of the Settlement Agreement ExxonMobil will alter their business practices in one of four ways within 12 months of the date of this Order:

    a)      eliminate one of the brands entirely;

    b)      change the formula of one of the brands;

    c)      disclose that both products share a common formula; or

    d)      continue to manufacture, market and sell the products under two different brands but charge the same net price when sold in identical volume sizes and packaging.

The Nolett and Pentz objectors concede that the injunctive relief does have value (Tr. p., 66,79, 81, 82). The objection regarding the value of injunctive relief does not refute or undermine the Court's finding that the Settlement is fair, reasonable and adequate. A Settlement is to be viewed in its "entirety in evaluating [the] fairness," and the Court should consider the facts "in the light most favorable to the settlement." Isby, 75 F. 3d at 1199 (internal quotation and citation omitted). The business practices relief inures a benefit to all class members, whether or not they file a claim. Class counsel relied on data received from ExxonMobil and their knowledge of the case. Class counsel placed a value on the injunctive relief of $75,000,000. If this amount is cut in 1/3 and valued at $25,000,000, it still has value. Moreover, the Court notes that regardless of the dollar value of this component to the Settlement, it involves significant and costly change to ExxonMobil's marketing practices, which directly

addresses the core challenge to those practices made by the Class. The Court also notes that the business practices relief was initiated solely as a result of the Settlement. See In Re Mexico Money Transfer Litigation, 267 F. 3d at 748 (affirming class action settlement, compromised, in part, of injunctive relief which was "not an outcome to be sneered at"); Isby, 75 F. 3d at 1199 - 2000 (affirming class action settlement compromised of injunctive relief). Counsel for both parties have convincingly demonstrated to the Court that the change in ExxonMobil's business practices are a direct result of the settlement in this case (Tr. p. 35, 39 - 40, 106, 109 - 110). The Court determines that the argument that the injunctive relief has no value is without merit.

## CONCLUSION

Except for the portion of the Settlement Agreement that concerns attorney's fees, costs and incentive awards, the Court concludes that the Settlement is fair, reasonable and adequate. Therefore, the Court **GRANTS** Plaintiff's Motion for Final Approval of Class Action Settlement (Doc. 33), which does not request approval of attorney's fees, costs and incentive awards and makes final its conditional certification of the class. The Court **HOLDS** that the Settlement is lawful, fair, reasonable and adequate. The Court finally **APPROVES** the Settlement. This Order granting final approval of the Parties Settlement is a final appealable order under Fed. R. Civ. P. 54 (b). This Court retains jurisdiction to enforce the terms of the Settlement.

**DATED: June 5, 2006.**

s/ Donald G. Wilkerson
**DONALD G. WILKERSON**
**United States Magistrate Judge**
